CTJ(12)

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 3 0 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES OF AMERICA

v.

MARCIA CARAWAY MORRISON (01)

Criminal No. 4:15-CR-

4-15CR-224-0

## INFORMATION

The United States Attorney Charges:

### Introduction

1.    M.G. is a resident of Decatur, Texas, whose sources of income include revenues generated from oil and gas related interests.

2.    Beginning in or around January 2011, and continuing through in or around October 2014, defendant **Marcia Caraway Morrison** worked for M.G. on a part time basis, managing M.G.'s business affairs.

3.    **Morrison**'s primary responsibilities included retrieving M.G.'s mail, paying M.G.'s bills by using blank checks that had been previously signed by M.G., computerizing all of M.G.'s paper documents relative to M.G.'s oil and gas interests, and depositing M.G.'s oil and gas revenue checks into M.G.'s Wells Fargo Bank checking account, ending in number 7306 (hereafter referred to as the "oil and gas account"). **Morrison** was not authorized to conduct any additional transactions relative to the oil and gas bank account, whether in person or via the internet. Most deposits into M.G.'s oil

**Information- Page 1**

and gas account were accomplished via direct deposit, and required no action by **Morrison**.

4. Prior to, and continuing after, January 2011, M.G. also maintained an additional Wells Fargo Bank checking account, ending in number 9112.

5. Unrelated to her employment, **Morrison**, along with her husband, maintained a personal checking account, ending in number 4641, at Wells Fargo Bank (hereafter referred to as "**Morrison**'s personal account").

6. Wells Fargo Bank is a financial institution which operates in interstate commerce. Wells Fargo Bank banking transactions conducted by customers via the internet, including transfers between accounts, are routed through a Wells Fargo Bank server situated outside the State of Texas. These internet transactions are routed through a Wells Fargo Bank server situated within the States of either Minnesota or North Carolina. Wells Fargo Bank does not maintain servers, used for the purpose of online customer transactions, within the State of Texas.

The Scheme and Artifice to Defraud

7. Beginning in or around January 2011, and continuing through in or around October 2014, **Morrison** devised and operated a scheme and artifice to defraud M.G., and to obtain money by means of false and fraudulent material pretenses and representations.

8. On or about January 3, 2011, after agreeing to serve as M.G.'s personal assistant, **Morrison** gained online access to M.G.'s oil and gas account at Wells Fargo

Bank, without the knowledge or consent of M.G. **Morrison** did so by setting up an online

banking feature, available to Wells Fargo Bank customers, for the account. This banking

feature was unknown to M.G.

9.     Beginning on or about January 3, 2011, after establishing online access to

the oil and gas account, **Morrison** began making online transfers of money from this

account into **Morrison**'s personal account, without the knowledge or consent of M.G.

Because Wells Fargo Bank limits the amount a customer can transfer between accounts

of different customers to $1,000, on each occasion **Morrison**'s transfers did not exceed

$1,000.

10.     In or around February 2012, **Morrison** told M.G. that **Morrison** could

more easily pay M.G.'s bills if M.G. added **Morrison** as a joint owner of M.G.'s Wells

Fargo Bank account, ending in number 9112 (hereafter referred to as the "joint account").

M.G. agreed, and on or around February 16, 2014, **Morrison** was added as a joint owner

of this account.

11.     According to Wells Fargo Bank policy, a customer can transfer any amount

of money between accounts, if the accounts are shared by the same customers.   Prior to

being added as a joint owner of the joint account, all of the online transfers **Morrison**

made were drawn from the oil and gas account and were deposited into **Morrison**'s

personal account, in amounts of $1,000 or less. Beginning on or about February 21, 2012,

after **Morrison** was added as a joint owner of the joint account, **Morrison** began making

online transfers in amounts greater than $1,000 from the joint account into **Morrison**'s

personal account, without the knowledge or consent of M.G. These transfers continued on a regular basis, without the knowledge or consent of M.G., until in or around October 2014.

12.     Beginning in or around January 2011, and continuing through in or around October 2014, **Morrison** transferred in excess of $1,000,000 from M.G.'s oil and gas account directly into **Morrison**'s personal account, or directly into the joint account, then directly into **Morrison**'s personal account, without M.G.'s knowledge or consent.

13.     Prior to **Morrison**'s employment with M.G., M.G.'s Wells Fargo Bank monthly banking statements were sent directly to M.G.'s accountant and bookkeeper, H.P. After being hired by M.G., **Morrison**, in order to conceal her theft, asked M.G. to have the statements sent electronically to **Morrison** so **Morrison** could perform her bookkeeping duties. The statements thereafter were sent to **Morrison** electronically and were no longer sent to H.P. Once **Morrison** began receiving the statements directly, the statements were not provided to either M.G. or H.P., in spite of requests by H.P. to provide the statements so that H.P. could complete M.G.'s tax documents.

14.     Upon being questioned by M.G. about the lack of documentation being provided to H.P., and in order to conceal her theft, **Morrison** told M.G. that M.G. need not be concerned because **Morrison** was now handling all of M.G.'s tax matters.

15.     In June 2014, M.G. retained the services of R.F., another accountant, to resolve questions surrounding M.G.'s tax matters. Thereafter, R.F. contacted **Morrison** on several occasions to arrange a time for **Morrison** to provide M.G.'s financial records

to R.F. so that R.F. could complete M.G.'s taxes. **Morrison** agreed to provide the records and scheduled appointments in order to do so. In order to conceal her theft, **Morrison**, on each occasion, then cancelled the appointments citing scheduling conflicts.

16.    During the time period during which **Morrison** was employed by M.G., M.G. commented that **Morrison** seemed to be purchasing several expensive assets. **Morrison**, in order to conceal her theft, told M.G. that **Morrison** was able to do so because **Morrison**'s husband was earning $500,000 per year.

## Count One
## Wire Fraud
## (Violation 18 U.S.C. § 1343)

The United States Attorney realleges the allegations set forth in the Introduction and the Scheme and Artifice to Defraud paragraphs of this Information.

On or about September 17, 2014, in the Fort Worth Division of the Northern District of Texas, defendant **Marcia Caraway Morrison**, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money by means of materially false or fraudulent pretenses or representations, knowingly caused to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals, that is: **Marcia Caraway Morrison** used a computer in Decatur, Texas, to knowingly access and transfer from M.G.'s Wells Fargo Bank checking account, ending in number 9112, $50,000.00, which was transmitted via interstate wire through a Wells Fargo Bank server situated outside of the State of Texas, thereby causing those funds to be deposited into the defendant's Wells Fargo Bank checking account, ending in number 4641.

In violation of 18 U.S.C. § 1343.

<u>Forfeiture Notice</u>
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461

Upon conviction of the Count One offense and pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461, defendant, **Marcia Caraway Morrison,** shall

forfeit to the United States any property, real or personal, which constitutes or is derived

from proceeds traceable to the Count One offense, including but not limited to:

a.  211 CR 4221, Decatur, Texas, more particularly described as 1.00 acres of land, being all that certain tract or parcel of land lying and being situated in Wise County, Texas, being a part of the ASA Hill Survey Abstract 363, including all buildings, appurtenances, and improvements located thereon;

b.  429 Private Road 4221, Decatur, Texas, more particularly described as 67.18 acres and a 30 foot road easement in the Asa Hill Survey, Abstract No. 363, Wise County, Texas and being part of the Second Tract (called 172-1/2 acres) as deeded to Ruth I. Hornback et al in Volume 344, Page 91, Real Records, Wise County Texas, and 43.05 acres in the Asa Hill Survey, Abstract No. 363, Wise County, Texas, and being part of the Second Tract described in Volume 344, Page 91, Real Records, Wise County, Texas, including all buildings, appurtenances, and improvements located thereon;

c.  951 FM 2264, Decatur, Texas, more particularly described as 24.41 acre tract of land situated in the Asa Hill Survey, Abstract No. 363, Wise County, Texas, and being that certain tract to Wilbur Lee Smith described in deed as recorded in Volume 771, Page 335, Real Records, Wise County, Texas, including all buildings, appurtenances, and improvements located thereon;

d.  2012 Jayco/Freightliner Seneca 36FK RV, VIN: 1FVACWDU8CHBJ6829;

e.  2012 Jeep Wrangler, VIN: 1C4BJWDG9CL266832;

f.  2012 Mercedes-Benz CLS550, VIN: WDDLJ7DB6CA016836;

g.  2014 Polaris Ranger RZR, VIN: 4XAST1EA1EF356802; and

h.      $2,985.78 in funds seized from Bank Account, ending in number 4641 in the names of Charley Joe Morrison, JR. and Marcia Morrison at Wells Fargo Bank, Decatur, Texas.

If any of the property described above, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

JOHN R. PARKER
UNITED STATES ATTORNEY

DAN COLE
Special Assistant United States Attorney
Tennessee State Bar No. 017929
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455